UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 08-11858-DHW
                                                         Chapter 11
CIRCLE CITY TRANSPORT, INC.,

   Debtor.

**MEMORANDUM OPINION**

Circle City Transport, Inc. (hereinafter "Circle City") filed an objection, as amended, to the claim of Lester Lee (Docs. #216 and #232). Evidentiary hearings were held on August 10, 2011, and September 14, 2011. Upon consideration of the facts and of the law as discussed herein, Circle City's objection to Mr. Lee's proof of claim will be overruled.

**Jurisdiction**

The court's jurisdiction in this disputed matter is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring jurisdiction in title 11 matters to the bankruptcy court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, because the allowance or disallowance of a claim against the bankruptcy estate is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), this court's jurisdiction extends to the entry of a final order or judgment.

**Findings of Fact**

Circle City is a common carrier engaged in the interstate trucking of goods. Mr. Lee, an employee of Circle City, filed a claim in the amount of $5,199.70 for unpaid wages for overtime work.[1] Neither party disputes that Mr. Lee was paid at a fixed rate whether he worked overtime in a particular period or not. Neither party disputes that he worked the hours he claims. Circle City contends that Mr. Lee is not entitled to overtime pay because of his job

---

[1] Mr. Lee's claim was filed for $11,193.00. At the hearing, Mr. Lee acknowledged that he had erred in his original calculation and that the claim should be reduced to $5,199.70. *See* Ex. C-1.

responsibilities.

Mr. Lee testified that he was hired to be Circle City's security guard. His duties did not include the repair and maintenance of vehicles. If needed, he would change a tire or two, but "that was about all I did. Other than that I was a security guard."

Johnny Baker, Circle City's president, testified that Mr. Lee worked as a night dispatcher and a mechanic. He hired Mr. Lee because he could perform multiple tasks, like changing tires and replacing brakes. "When a truck came in at night and needed tires, he put them on." Some weeks this was needed, and some weeks it was not. Mr. Lee also answered the telephone. If a driver called in after a vehicle breakdown, Mr. Lee would call the maintenance or dispatch supervisor.

James Clark, Circle City's general manager during the relevant time period, testified that Mr. Lee was the only person working at Circle City during his shift at night and on weekends. Drivers would come and go at all times of the night. Mr. Lee performed a variety of duties, including dispatching, answering the telephone – talking with drivers and customers, logging drivers in and out, changing tires, addressing a light problem, checking temperatures in refrigerated trailers, and noting the amount of gasoline taken to refuel tractors leaving Circle City's facility. He was responsible for both plant security and maintenance of vehicles.

## Controlling Law

Pursuant to 11 U.S.C. § 502(b), if an objection to a proof of claim is made, this court must determine the proper amount of the claim. Under the Federal Rules of Bankruptcy Procedure, a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Therefore, the party objecting to the claim has the burden of presenting evidence sufficient to meet the evidentiary weight accorded to the claim under the Rules. "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3rd Cir. 1992). Although there

is a shifting burden of proof in a claims contest, the ultimate burden of persuasion rests upon the creditor. *Id.*

"Section 13(b)(1) of the Fair Labor Standards Act provides an exemption from the . . . overtime requirements" of the act. 29 C.F.R. § 782.1(a). "The exemption is applicable to any employee with respect to whom the Secretary of Transportation has power to establish qualifications . . . pursuant to the provisions of section 204 of the Motor Carrier Act of 1935." *Id.*

"The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees" "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The overtime pay exemption applies to employees who "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. . . ." *Id.* Under decisions of the United States Supreme Court, the exemption is limited to employees "whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (I) As that of a driver, driver's helper, loader, or mechanic . . . ."[2] 29 C.F.R. § 782.2(b)(2). The name of the position or work is not controlling. "[W]hat is controlling is the character of the activities involved in the performance of his job." *Id.*

Generally, if the bona fide duties of the job are such that the employee is called upon in the ordinary course of work to perform safety-affecting activities, the exemption applies to all work weeks that the employee is employed in such job. *See* 29 C.F.R. § 782.2(b)(3). Further, the rule applies regardless of the proportion of the employee's time which is actually devoted to safety-affecting work. *Id.* However, "where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply." 29 C.F.R. § 782.2(b)(3).

---

[2] See *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947), *Levinson v. Spector Motor Service*, 330 U.S. 649 (1947), and *Morris v. McComb*, 332 U.S. 422 (1947) cited by 29 C.F.R. § 782.2(b)(2).

3

A mechanic to whom the exemption applies is an employee whose duty it is to keep motor vehicles "in a good and safe working condition." 29 C.F.R. § 782.6(a). Keeping lights in good and safe working order has been determined to directly affect safety of operation. *Id.* "Inspecting and checking air pressure in tires, changing tires, and repairing and rebuilding tires" have been held to directly affect safety of operation. *Id.*

Activities which do not fall within the "mechanic exception" include those of dispatchers or "servicemen who do nothing but oil, gas, grease, or wash the motor vehicles." 29 C.F.R. § 782.6(c)(1). "To these may be added activities such as filling radiators, checking batteries, and the usual work of such employees as . . . watchmen . . . ." *Id.*

In addition, the exemption under the "mechanic exception" has been held inapplicable to those who repair and rebuild "parts, batteries and tires removed from vehicles where a direct causal connection between their work and the safe operation of motor vehicles on the highways is lacking because they do no actual work on the vehicles themselves and entirely different employees have the exclusive responsibility for determining whether the products of their work are suitable for use, and for the correct installation of such parts, on the vehicles." 29 C.F.R. § 782.6(c)(3).

Finally, the overtime exemption does not apply where the activities of the employee within the exemption do not constitute "a substantial part" of the employee's activities and duties. *See Potashnick Local Truck System, Inc. v. Archer*, 207 Ark. 220, 179 S.W.2d 696 (Ark. 1944) (where only one of ten duties assigned the employee was within the scope of the overtime exemption, it was a question of fact as to whether that duty was a substantial part of the employee's work so as to preclude overtime pay).

### Discussion

At issue here is whether Mr. Lee's job activities at Circle City fall within the "mechanic exception" exempting Circle City from paying him overtime wages. The evidence clearly establishes that Mr. Lee's job involved a number of activities including the following: night watchman, night dispatcher, telephone answerer, tire changer, light repairer, refrigerated trailer temperature

4

checker, and fuel usage monitor. Of these activities, only tire changing and light repair could possibly bring Mr. Lee's job within the exception.

With regard to Mr. Lee's work as a tire changer, such activity has been held to affect safety of operations. However, there is no evidence that Mr. Lee did actual work on the vehicles themselves or that his work was not overseen by others whose responsibility it was to assess Lee's work product. Without that evidence, the "mechanic exemption" would not apply. Therefore, the court finds that Mr. Lee's incidental changing of tires or batteries does not give rise to the "mechanic exception" for overtime pay.

Mr. Lee's occasional repair and changing of lights is a closer question. While keeping lights in working order has been held to be an activity affecting safety, there is no evidence that Mr. Lee preformed this type work within every pay period. Even to the extent that he did this work, there is no evidence that this activity constituted a substantial part of his work. Hence, Mr. Lee's activity of repairing lights does not bring him within the overtime exception.

## Conclusion

For these reasons Circle City's objection to Mr. Lee's proof of claim must be overruled. An order doing so will enter separately.

Done this the 31st day of October, 2011.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Collier H. Espy, Jr., Circle City's Attorney
 Lester Lee, Creditor/Claimant